# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

DANIEL LUKE SCHWARTZ,

    Petitioner,

Case No.: _____

    v.

SHARON ROSE HINNENDAEL

    Respondent

## PETITION FOR ISSUANCE OF A SHOW CAUSE ORDER
## AND FOR RETURN OF CHILDREN TO THE UNITED STATES OF MEXICO
_____

    NOW COMES PETITIONER, Daniel L. Schwartz, by his attorneys, Cade Law Group LLC, and as and for his Petition to the Court for Issuance of a Show Cause Order and Demand for Return of Minor Children to the United States of Mexico, alleges and shows the Court as follows:

**I. Introduction**

    1.    Petitioner, Daniel Luke Schwartz ("Petitioner" or "Schwartz"), is a resident of the United States of Mexico (hereinafter, "Mexico") seeking the return of his minor children, who were wrongfully removed from Mexico to Wisconsin by the children's mother without the Petitioner's knowledge or consent on or about June 16, 2020. Petitioner brings this action pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10494 (1986)) (hereinafter, the "Convention," a copy of which is attached hereto as Exhibit A). The Convention came into effect in the United States of America (hereinafter, "United States") on July 1,

1988, and was ratified between the United States and Mexico on October 1, 1991. Article I of the Convention explains that its objectives are: "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting states; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Article II of the Convention provides that "[t]he judicial or administrative authorities shall act expeditiously in proceedings for the return of children."

2. The provisions of the Convention have been given the force and effect of law by the United States Congress through the passage of the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq. (1995) (hereinafter "ICARA"). The ICARA was enacted for the specific purpose of "establish[ing] procedures for the implementation of the Convention in the United States." 42 U.S.C. § 11601(b)(l).

## II. Jurisdiction and Venue

3. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 42 U.S.C. § 11603(a).

4. Venue is proper in the Eastern District of Wisconsin, Green Bay Division, pursuant to 28 U.S.C. § 139l(d) and 42 U.S.C. § 11603(b), because the Respondent and the children who are the subject of this Petition are located in Sister Bay, Wisconsin, a municipality in Door County, Wisconsin, which is located in this District and this Division of the District.

## III. Parties and Wrongfully Removed Children

5. Petitioner is a citizen of the United States and a resident of Mexico through his employment at Grupo Vidanta, a Mexican conglomerate headquartered in

Puerto Vallarta, Mexico involved in the design, construction, financing, operation and maintenance of hotels, resorts, and cruises. Petitioner manages the international sale of Mexican condos, vacation homes, and other vacation products for international tourists in Mexico. Petitioner was born on October 6, 1987. Petitioner is both an "applicant" as defined in 42 U.S.C. § 11602(1) and a "petitioner" as defined in 42 U.S.C. § 11602(4).

6. The Respondent, Sharon Rose Hinnendael, (hereinafter "Respondent"), is a citizen of the United States. Respondent was born on May 22, 1986. She is also a "respondent" within the meaning of 42 U.S.C. § 11602(6). On information and belief, Respondent is currently residing at her parent's residence, located at 9823 Marshalls Point Bay Road, Sister Bay, Wisconsin 54234-0680.

7. Petitioner and Respondent are the parents of Henry Herman Schwartz (hereinafter "Henry"), a child who was born in Jalisco, Mexico on June 19, 2018 and Alice Judith Schwartz (hereinafter "Alice"), a child who was born in Jalisco, Mexico on March 10, 2020. Both Henry and Alice ("the children") are citizens of Mexico. The children are minors under the age of 16 who are thus subject to the terms of this Convention in accordance with Article 4 thereof.

8. Petitioner and Respondent were married on April 19, 2014 and moved to Mexico on July 3, 2015.

9. Petitioner and Respondent have resided together in Mexico continuously from July 3, 2015 until May 2020, although the parties made occasional short visits to Wisconsin and California to see their families. These visits were never longer than two weeks in length.

10. Petitioner is employed at Grupo Vidanta, a company that is headquartered

and principally does business in Mexico. His employer does not have offices in the United States.

11. Petitioner was present in Mexico for the births of both children. He has resided with Respondent and their children since their births at the parties' marital residence located at Lomas Del Sol, #100, Nuevo Vallarta, Nayarit, 63735.

12. Petitioner is listed on Henry's Mexican birth certificate as Henry's father and is listed as Henry's father on his passport.

13. Upon information and belief, Respondent did not list Petitioner on Alice's Mexican birth certificate as her father. Upon information and belief, Alice does not have a passport.

14. During the height of the COVID-19 pandemic, Petitioner was furloughed by his employer, causing marital conflicts between Petitioner and Respondent. On May 6, 2020, Petitioner agreed to move out of the marital residence for two weeks, and the parties explicitly discussed Petitioner returning on May 21, 2020. During this two-week period, Petitioner sent Respondent approximately $15,000 at her request.

15. Petitioner saw Respondent and the children regularly between May 6, 2020 and May 20, 2020 at the marital residence. On May 19, 2020, Petitioner confirmed with Respondent that he would be returning to the marital residence on May 21, 2020.

16. On May 20, 2020, Respondent removed the children from the marital residence and refused to disclose their location to Petitioner. Upon information and belief, Respondent first moved to another residence in Puerto Vallarta, and continues to maintain that residence to date. On or about June 16, 2020, Respondent removed the children from Mexico and transported them by commercial flight to Wisconsin.

17. Upon leaving the marital residence, Respondent took all of the family's vital documents, including the children's birth certificates, Henry's passport, Henry's Consular Report of Birth Abroad, Petitioner's driver's license, Petitioner's Mexican resident card, Petitioner's Social Security card, Petitioner's birth certificate, and the parties' marriage license. Respondent also removed all of the money from the parties' joint bank accounts, totaling approximately $10,000, leaving Petitioner with no access to funds and no ability to travel to the United States to see the children.

18. Petitioner learned Respondent had left the country with the children through social media. Petitioner did not consent to Respondent removing the children from Mexico and is unaware of how Respondent was able to leave the country absent his consent.

19. Since the wrongful removal of the children from Mexico, Petitioner has asked Respondent and Respondent's father to speak to the children nearly every day. Respondent, through her father, demanded Petitioner pay Respondent $800 per week to speak to the children.

20. Respondent refused to allow Petitioner to see or speak to the children for over forty days, and to date has only allowed Petitioner to see the children twice through a video-chat application.

**IV.  Respondent's Violation of the Convention and ICARA**

21. At the time Respondent wrongfully removed the children to the United States in June 2020, both children's habitual residence, within the meaning of Article 3 of the Convention, was Puerto Vallarta, Mexico.[1]

---

[1] Puerto Vallarta is located in the Mexican state of Jalisco, and the parties' residence was located in Nuevo Vallarta, in the Mexican state of Nayarit. While separate municipalities, both

22.     The term "habitual residence" is undefined by the Convention. *Koch v. Koch*, 450 F.3d 703, 708 (7th Cir. 2006). The determination of habitual residence "is a fact-specific inquiry that should be made on a case-by-case basis. Moreover, . . . a parent cannot create a new habitual residence by wrongfully removing and sequestering a child." *Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001). The analysis "focuse[s] on the parents' last shared intent in determining habitual residence" *Koch*, 450 F.3d at 715.

23.     In the present case, the parties' actions clearly demonstrate that Mexico, not Wisconsin, is the habitual residence of the children:

A.     Petitioner and Respondent met in California and were married in California on April 19, 2014. Respondent had lived in California for five years prior to meeting Petitioner in 2014 and lived in Chicago and Miami for multiple years before moving to California. Upon information and belief, Respondent has not been a resident of Wisconsin since she graduated high school.

B.     In 2015, Respondent informed Petitioner she was moving to Mexico. In an effort to save their marriage, Petitioner agreed to move as well.

C.     Petitioner and Respondent lived together in a shared residence in Mexico for five years, first in Puerto Peñasco, then in Puerto Vallarta.

D.     At the time of the initial move to Mexico in 2015, Respondent was a temporary legal resident of Mexico through her employment at Grupo Vidanta. Upon arrival in Mexico, Petitioner obtained employment and legal residency through the same company.

E.     Respondent left her job once she became pregnant in 2016, although the pregnancy had complications and was not viable. Soon after, on April 23,

are part of the Puerto Vallarta metropolitan area (hereinafter "Puerto Vallarta").

2016, the parties moved to Puerto Vallarta.

  F. Grupo Vidanta's corporate headquarters is located in Puerto Vallarta. Petitioner and Respondent discussed the move from Puerto Peñasco to Puerto Vallarta as a way to advance Petitioner's career with Grupo Vidanta and become more permanently established in Mexico.

  G. At no time did the parties make plans to move back to the United States, and when discussing the topic with Petitioner, Respondent was adamant that she did not want to reside in the United States.

  H. Upon information and belief, Respondent is eligible for permanent legal residency in Mexico.

  I. The parties and the children have health insurance in Mexico through Petitioner's employer, and the parties do not have health insurance in the United States.

  J. Both parties received regular healthcare and dentistry in Mexico.

  K. Respondent had a therapist in Mexico, Alexa Thurman. The parties also met with Ms. Thurman for couples' counseling.

  L. Respondent regularly saw a psychiatrist in Puerto Vallarta, Dr. Adi Janette Dominguez. After Henry's birth, Respondent was treated for post-partum depression with Lexapro, an anti-depressant medication. Respondent continued to take Lexapro until she learned she was pregnant with Alice, and she resumed taking the medication after Alice's birth. Upon information and belief, Respondent stopped taking her prescribed Lexapro before removing the children from Mexico.

  N. Upon information and belief, Respondent continues to maintain a

residence in Puerto Vallarta.

O. The parties own two dogs in Mexico. The parties hired Julio at Tender Loving Dog Care in Puerto Vallarta to walk the dogs three times a day for the past four years. Upon leaving the martial residence, Respondent boarded the dogs with the Puerto Vallarta Dog Training Club. When Petitioner and his Mexican attorney went to retrieve the animals, LaBrac, the dog trainer, threatened Petitioner and refused to release the animals to Petitioner's care. To date, Petitioner has been unable to retrieve the dogs.

P. Prior to the birth of Henry, Respondent went through seven months of In Vitro Fertilization treatment with Dr. Sonny Stetson at Liv Fertility Center in Puerto Vallarta.

Q. Dr. Laura Garcia, Respondent's obstetrician, delivered both children at San Javier Hospital in Puerto Vallarta.

R. The children's pediatrician, Dr. Leticia Arechiga, is located in Puerto Vallarta. Henry saw Dr. Arechiga monthly while in Mexico.

S. The children have always had a full-time nanny in Mexico.

T. For the past year, Henry took daily swim lessons through Malibu Delfines in Puerto Vallarta.

U. Prior to Respondent's wrongful removal of Henry from Mexico, he had only traveled to Wisconsin twice for approximately two weeks in total. Furthermore, prior to Respondent's wrongful removal of the children, Alice had never left Puerto Vallarta.

V. Both children are Mexican citizens.

24. Because the children's habitual residence at the time they were wrongfully removed to the United States was Puerto Vallarta, Mexico, Petitioner's custodial rights are defined by Mexican law. Convention Art. 3(a).

25. Petitioner has custodial rights pursuant to Mexican law, which made the children's retention in the United States contrary to Petitioner's custodial rights.

26. Because Respondent's removal of the children from their habitual residence in Puerto Vallarta, Mexico violated Petitioner's custodial rights, the removal was wrongful within the meaning of Article 3 of the Convention and in violation of Petitioner's rights under the Convention and the ICARA, 42 U.S.C. § 11601, et seq.

27. Because Respondent's removal of the children from their habitual residence was wrongful, the Convention and the ICARA authorize this Court to order the return of the children forthwith. Convention, Art. 3; 42 U.S.C. § 11603.

28. 42 U.S.C. § 11604(b) conditions this Court's authority to order a child removed from a person having physical control of the child on the satisfaction of applicable requirements of state law. The relevant Wisconsin law, section 29 of the UCCJEA, Wis. Stat. § 822.29, requires a party's initial pleading to include certain information under oath regarding the child. Pursuant to Section 29 of the UCCJEA, Petitioner declares as follows:

    A. On information and belief, the children's temporary address is 9823 Marshalls Point Bay Road, Sister Bay, Wisconsin 54234-0680, which is Respondent's parents' residence.

    B. Both children lived at Lomas Del Sol, #100, Nuevo Vallarta, Nayarit, 63735 from their birth until their wrongful removal from Mexico to Wisconsin.

C. Petitioner has not participated as a party or witness or in any other capacity, in any other proceeding concerning the custody of or physical placement or visitation with the children.

D. Petitioner is unaware of any court proceeding filed by Respondent. Petitioner is in the process of filing for divorce in Mexico, but the process has been delayed because Respondent took the parties' vital documents.

E. Petitioner does not know of any person or institution not a party to this proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or visitation with, the child.

29. ICARA also authorizes this Court, "[i]n furtherance of the objectives of ... the Convention ... [to] take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." 42 U.S. C. § 11604. Under Section 210(a) of the UCCJEA, "[t]he court may order any party to the proceeding who is in this State or over whom the court has personal jurisdiction to appear personally before the court. If that party has physical custody of the child the court may order that he appear personally with the child …. " Wis. Stat. § 822.295.

30. The purpose of the Convention is to determine which country is most appropriate to have jurisdiction, not to determine the best parent or to determine best interest of the child. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20, 130 S. Ct. 1983, 1995 (2010). "The entire purpose of the Convention is to deter parents from absconding with

their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction." *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012).

31. A Complaint under the Convention may be treated as an application for a Writ of Habeas Corpus under 28 U.S.C. §2241, et seq., pursuant to which this Court may issue an order directing Respondent to show cause on an expedited basis why the children should not be returned immediately to the jurisdiction of their habitual residence in Mexico. *See Zajaczkowski v. Zajaczkowski*, 932 F. Supp. 128, 132 (D. Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus ... pursuant to 28 U.S.C.A. § 2243"); *see also Miller v Miller*, 240 F.3d 392, 397-98 (4th Cir. 2001); *In re: McCullough*, 4 F. Supp. 2d 411 (W. D. Penn., 1998); Convention, Art. 11 (Establishing six-week target time frame for resolution of petitions under the Convention).

32. Petitioner has incurred, and will continue to incur, various necessary expenses, including court costs, legal fees, transportation and other costs relating to the return of the children.

**WHEREFORE**, Petitioner respectfully requests that this Court enter orders granting him the following relief:

A. A Preliminary Show Cause Order:

1. Commanding the Respondent (with or without the minor children) to appear in this Court to show cause why the minor children have been kept from their father and why the minor children should not be returned to Mexico forthwith;

2. Requiring Respondent to surrender to this Court any passports, residency and travel documents in her name, Petitioner's name, and/or in the names of the children;

3. Prohibiting the children's removal from the jurisdiction of this Court, pending final determination of the Petition;

4. Requiring Respondent to make the children available for daily communication via the internet and telephone pending a final resolution of the Petition; and

5. Providing that if Respondent fails to appear pursuant to this Court's Show Cause Order, this Court will issue an Order directing that the names of the minor children be entered into the national police computer system (N.C.I.C.) missing persons section and that an arrest warrant will be issued for Respondent; and

B. A Final Order:

1. Declaring and adjudicating that Respondent's retention of the children in the United States was wrongful under Article 3 of the Convention;

2. Compelling the return of the children to their habitual residence in Puerto Vallarta, Mexico;

3. Requiring Respondent to pay the necessary expenses incurred by Petitioner in connection with these proceedings, pursuant to 42 U.S.C. § 11607(3); and

4. Granting such other and further relief as this Court deems just and proper.

Dated this 19th day of September, 2019

**CADE LAW GROUP LLC**

By: s/Nathaniel Cade, Jr.
Nathaniel Cade, Jr., SBN 1028115
P.O. Box 170887
Milwaukee, WI 53217
(414) 255-3802 (phone)
(414) 255-3804 (fax)
nate@cade-law.com

Attorneys for Plaintiffs