DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

DANIEL LUKE SCHWARTZ,

        Petitioner,

-vs-

SHARON ROSE HINNENDAEL,

        Respondent.

Case No. 20-CV-1028

## DECLARATION OF SHARON R. HINNENDAEL

Sharon Hinnendael, under penalty of perjury, hereby declares as follows:

1. I am the Respondent in this above-titled matter, and I have personal knowledge of the facts and circumstances surrounding the subject matter of this lawsuit.

2. I make this Declaration upon personal knowledge and in support of the Respondent's Answer and Affirmative Defenses ("Answer").

3. I am a United States citizen and currently reside in the State of Wisconsin, living at a single-family residence located at 9823 Marshall's Point Bay Road, Sister Bay, Wisconsin. I have a Wisconsin driver's license and received my recent Federal Stimulus check based upon my tax address of 9823 Marshall's Point Bay Road, Sister Bay, Wisconsin.

4. I was born in Green Bay, Wisconsin on May 22, 1986 and resided in Green Bay, Wisconsin with my parents, Barbara and Terry Hinnendael through high school. My parents are retired.

1

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

5. I attended and graduated from Notre Dame de la Baie Academy in Green Bay in May of 2004. During middle school I became a professional model and actress and after high school I traveled often related to my professions including living in the following locations, Los Angeles, Chicago, New York, Miami, New Zealand, Milan, Italy, Vancouver, and San Francisco. I moved to Los Angeles, California after my travels sometime in 2008 and was employed full time as a model and actress through 2014.

6. Upon information and belief, the Petitioner, Daniel Luke Schwartz ("Petitioner"), is a United States Citizen and grew up in Pasadena, California. The Petitioner's parents reside in Pasadena, California and his Mother, Mary Beth Evans, is by profession a soap opera actress and his Father, Michael Schwartz is by profession a plastic surgeon.

7. Upon information and belief, as told to me by the Petitioner, he attended Dennison College in Ohio and after college the Petitioner moved to South East Asia to teach English and then moved to New Zealand to attend graduate school. Upon information and belief, after New Zealand the Petitioner moved back to California to work at Enterprise Rent-A-Car.

8. The Petitioner, and I began dating on or about October of 2013 ("Dating Period") when we were both residing and employed in Los Angeles, California.

9. On our first date, October 28, 2013, the Petitioner told me, "You are mine. You will not be with anyone else, ever again. You are my wife and I will marry you and have kids with you."

10. During the Dating Period, the Petitioner would request sex multiple times during each day. At times the requests for sex would be demanding and against my will.

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

11. During the Dating Period, the Petitioner attempted to turn me against my family, specifically my Mother convincing me that she was controlling and "an evil witch" who was a miserable angry person who did not want to see me happy. I am close to my Mother, but due to the Petitioner's manipulation during this period of time, I stopped talking to my family.

12. During the Dating Period, the Petitioner likewise convinced me that his family was verbally abusive towards him and that I should have little or no contact with them.

13. During the Dating Period, the Petitioner and I took a vacation to Belize in April of 2014 with my family. During the vacation the Petitioner made us rum drinks and then suggested that we take a kayak out into the ocean after we had been drinking. Once out into the ocean with the kayak, the Petitioner jumped off and swam to shore telling me that he was going to get something and would be back. The Petitioner never returned to the kayak. I fell asleep waiting for the Petitioner return and was awoken by a British family who was also on the ocean. The British family found me floating in the ocean and woke me up and assisted me in returning safely to my hotel. The Petitioner blamed me for the incident.

14. The Petitioner told me that he wanted to marry me in Wisconsin. The Petitioner and I visited a Wisconsin wedding venue (Gordon Lodge) and asked for my parents to reserve it for us which required my parents to make a $5,000.00 deposit on our behalf. After the Petitioner knew that the wedding venue had been reserved he backed out of the wedding saying that his parents were against us getting married.

15. I tried to leave the Petitioner many times during our Dating Period but he would tell me that I was no longer young and beautiful and convinced me that no one else would want me.

16. During this Dating Period, the Petitioner would always apologize to me and tell me that I was his "special one that he looked for his entire life." He would buy me extravagant gifts and shower me with words of love and apologize for his bad acts.

17. Despite warning signs, the Petitioner convinced me that he was the only person who would love me and I married him on April 19, 2014 in Glendale, California.

18. Shortly after our wedding date, the Petitioner began making threats to me including that he would put my body in a vat of acid if I ever left him and no one would ever find my body. During this period of time, I witnessed the Petitioner abuse a substantial amount of illegal drugs.

19. I had never used drugs prior to meeting the Petitioner and on a few occasions while with him, the Petitioner would have me drink too much and pressured me to try illegal drugs. That upon information and belief the Petitioner has been a drug user since the age of 11 years old. As a result of this tumultuous period in my life, I left the Petitioner in December of 2014 and moved back to Wisconsin at which time I became sober and quit acting and modeling.

20. On or about June 1, 2015, at the Petitioner's request, and due to his bad credit, he convinced me to co-sign a lease with him for an apartment in Los Angeles, California. However, I only visited with the Petitioner in Los Angeles for a short time in an attempt to reconcile but did not ever reside in the apartment permanently as we were separated at this time and I was living in Wisconsin.

21. On or about June 26, 2015, I left the States for Puerto Penasco, Mexico for new employment at Vida Vacations. I also left the States for personal safety reasons related to the Petitioner's continued harassment. See **Exhibit 1**, attached and incorporated by reference, a

4

Case 1:20-cv-01028-WCG   Filed 07/31/20   Page 4 of 12   Document 23

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

copy of my June 26 bus ticket to Mexico as well as a copy of my June 25 message to my employer expressing excitement of starting a new job.

22. On or about July 1, 2015, the Petitioner followed me to Mexico, seeking reconciliation of the Marriage. The Petitioner again promised to refrain from engaging in domestic harassment and substance abuse, convincing me to reconcile and showering me with love and gifts. See **Exhibit 2**, attached and incorporated by reference, a copy of the Petitioner's July 1st plane ticket.

23. However, shortly after we reconciled in Mexico, he again began threatening my life telling me that it would be so cheap and easy to hire, "any poor uneducated beaner" to kill me and take my body somewhere no one would ever find it.

24. That on March 9, 2018, while my parents were visiting us, the Petitioner threatened to have a fellow patron of a restaurant in which we were eating killed by the cartel because the gentleman was talking too loudly. The Petitioner continued to threaten the Respondent's parents that same evening of which the Respondent has an audio recording and the Respondent's Mother has a contemporaneous journal entry regarding the incident.

25. The Petitioner asserts that he is a permanent resident of Mexico but the documentation submitted to this court regarding the same is incomplete. I have no knowledge that the Petitioner is a permanent resident of Mexico and upon information and belief he is only an independent contractor for an American Company, Vidanta, selling time shares in Mexico.

26. That I am not a permanent resident of Mexico as I only am able to stay in Mexico on a travel Visa that requires me to come back to the United States every six months.

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

27. During the Marriage, I discovered the Petitioner was persistently consuming alcohol and illicit drugs. From 2014 through 2020, I personally observed the Petitioner possess or consume the following substances at the following rate:

   a. Alcohol, daily

   b. Marijuana and other tetrahydrocannabinol, daily

   c. Prescription opioids, daily

   d. Prescription benzodiazepine, including diazepam ("Valium") and Lexapro (non-prescription), alprazolam ("Xanax"), daily

   e. Cocaine, daily

   f. Lysergic acid diethylamide ("LSD"), monthly

   g. Psilocybin mushrooms, monthly

   h. Heroin, yearly

   i. Nitrous oxide, yearly

   j. Blood pressure medicine without a prescription, daily

Upon information and belief, the Petitioner procured the foregoing illicit substances from individuals affiliated with transnational criminal organizations operating in Mexico as well as from fellow employees at Vidanta.

28. The Petitioner and I resided together in Mexico from July of 2015 to May of 2020, first in Puerto Penasco, then in Puerto Vallarta. Despite the Petitioner's promises, the foregoing domestic harassment and substance abuse continued while in Mexico.

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

29. Shortly after the reconciliation in July of 2015, I became pregnant to the Respondent while residing in Puerto Penasco. At the Petitioner's request, I quit my job at Vida Vacations in Puerto Penasco, but unfortunately suffered a miscarriage.

30. The Petitioner and I experienced significant difficulties with becoming pregnant again and sought medical intervention from, Dr. Sonny Stetson. Dr. Sonny Stetson advised the Petitioner that his self-admitted persistent and pervasive substance abuse issues were a contributing factor to our difficulties in conceiving a child. In response, the Petitioner refused to stop abusing drugs and alcohol and instead convinced me to undergo In Vitro Fertilization ("IVF") rather than become sober.

31. On June 19, 2018, I gave birth to our son, Henry Herman Schwartz ("Henry"). Henry who, while born in Mexico is a United States Citizen as evidenced by United States of America Department of State documentation. A true and correct copy of Henry's citizenship documentation is attached and incorporated by reference as **Exhibit 3,** by way of a copy of Henry's Passport and Birth Certificate.

32. Shortly after the birth of Henry, the Petitioner's domestic harassment and substance abuse continued, if not escalated. During this period the Petitioner would often restrain my arms and tell me it was for my own protection.

33. That on December 18, 2019, the Petitioner purchased a camera home security system for our shared home in Mexico. That between October 14, 2019 and February 27, 2020 our "in-home" security system recorded the Petitioner consuming illegal drugs in our kitchen, living room and the Petitioner's office. This was in the presence of Henry which, based upon

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

information and belief, caused Henry psychological harm and perpetuated an intolerable living environment.

34. The Petitioner regularly consumed drugs and alcohol while caring for the Children. Upon information and belief during Henry's birth, the Petitioner was under the influence of alcohol and cocaine. On another occasion, the Petitioner prepared and consumed an illicit substance while he was caring for Henry during Henry's bath. This was in the presence of Henry which, based upon information and belief, caused Henry psychological harm and perpetuated an intolerable living environment.

35. On many occasions, I discovered Henry attempting to smoke one of the Petitioner's abandoned electronic cigarettes located in the marital residence.

36. That after Henry was born he was not habitually located in Mexico as he left Mexico to go to the United States with myself and the Petitioner on the following occasions:

    a. September 6-13, 2018, Wisconsin (Petitioner, Respondent & Henry);

    b. October 3-8, 2018, Pasadena (Petitioner, Respondent & Henry);

    c. November 19-26, 2018, New York City (Petitioner, Respondent & Henry);

    d. February 12-19, 2018, Wisconsin (Petitioner, Respondent & Henry);

    e. July 1-8, 2019, Pasadena (Petitioner, Respondent & Henry);

    f. November 1-13, 2019, Wisconsin (Petitioner & Henry);

    g. November 20-22, 2019, Pasadena (Petitioner & Henry);

    h. December 25, 2019, Pasadena. (Petitioner, Respondent & Henry).

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

37.     Upon information and belief, the Petitioner traveled from Mexico on the following dates without either myself or the Children (Alice and Henry are collectively referred to as "Children" herein)(dates are estimated time periods as I do not have exact travel records for the Petitioner):

    a.   Florida, February 25-29, 2018

    b.   Ibiza and Madrid Spain, September 17-24, 2019;

    c.   Los Angeles, California, September 24-26, 2019;

    d.   Los Angeles, California, February 27-March 3, 2019;

    e.   Phoenix, Arizona, May 22-27, 2019;

    f.   New York, City, August 30-September 4, 2019;

    d.   Los Angeles, California, February 28-March 1, 2020;

    e.   Los Angeles, California, January 25-27, 2020.

Upon information and belief the Petitioner also traveled to Canada in 2018 but I do not know the exact dates.

38.     On or about March 10, 2020, I gave birth to our daughter, Alice Judith Hinnendael ("Alice"). Alice was born in Mexico but is a United States Citizen as evidenced by United States of America Department of State documentation. A true and correct copy of Alice's birth certificate and United States Passport is attached and incorporated by reference as **Exhibit 4**.

39.     During May of 2020, I demanded the Petitioner move out of our shared residence because of the risk of harm to the Children caused by Petitioner's domestic and substance abuse.

9

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

40. On May 19, 2020, at my request, the Petitioner underwent a drug test and provided me with a copy of the results showing that he had the presence of cocaine and marijuana in his system.

41. On or about May 28, 2020, the Children and I escaped the marital residence located in Puerto Vallarta, Mexico.

42. That on June 3, 2020 the Petitioner emailed me and said he would go into Rehab.

43. On June 11, 2020, I applied for and was granted a restraining order against the Petitioner in the Mexican municipality of Bahía de Banderas. The judicial official granted the restraining order because the Petitioner posed an imminent risk to the safety of the Children and myself. A true and correct copy of the restraining order and my petition is attached and incorporated by reference as **Exhibit 5.**

44. I applied for and was granted a United States passport for Alice on an emergency basis due to the gravity of the Petitioner's dangerousness and imminent risk of harm to the Children and myself.

45. On or about June 17, 2020, the Children and I left Mexico for Sister Bay, Wisconsin.

46. The Petitioner was aware of the fact that I was coming to Wisconsin with the Children and consented to the same on multiple occasions.

47. On June 22, 2020, after the Petitioner knew the Children and I were in Mexico, the Petitioner expressly acquiesced in writing to my Children and myself being in Wisconsin.

48. Since relocating to Sister Bay, the Children and I have a stable, safe home environment. The Children and I reside at my parents' residence. My parents have granted the

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

Children and me indefinite access to an apartment unit located on their residential property. The Children now have a regular schedule for eating, sleeping and activities. The Children are receiving regular medical attention from medical professionals in Door County. The Children have regular contact with my extended family and the Petitioner's extended family. The Children have developed relationships with their cousins, Madeline, age 3, and Charlie, age 1, and their parents, my siblings. The Children have regular video conferences with the Petitioner's extended family, including the Petitioner's father, Michael, and brother, Matthew. The Children and I are now involved in Door County community activities, including, among others, regular play dates with children of comparable ages, enrollment and regular attendance at Stella Maris Parish located in Door County, and participation in various local support groups for domestic violence victims.

49. That upon information and belief and based upon messaging and audio communication in my possession, multiple members of the Petitioner's immediate family members, friends and other individuals in Mexico and the United States all possess knowledge of the Petitioner's alcohol and drug abuse and violent tendencies that occurred towards me and in the physical presence of the Children. Based upon information and belief, the Petitioner's actions caused emotional and psychological harm to the Children and perpetuated an intolerable living environment.

50. That upon information and belief the Petitioner has also threatened the life of our former house cleaner and the Respondent's former dog trainer.

51. That during Face Time calls, which my attorney consented to during a phone conference with the court on July 24, 2020 in an attempt to facilitate the Petitioner's relationship

DocuSign Envelope ID: 19E44E3B-BCF8-4AF5-A6E2-50A1DA9CEB5A

with the Children, the Petitioner has now become abusive in his speech with Henry. Said phone calls and communications by the Petitioner towards the Children directly caused emotional and psychological harm to the Children and perpetuated an intolerable living environment.

52. I am concerned that if the Children are forced to return to Mexico it would expose them to a grave risk of harm due to the Petitioner's history of domestic and substance abuse. All actions and communications by the Petitioner described herein towards the Children directly caused emotional and psychological harm to the Children and perpetuated an intolerable living environment.

53. Moreover, since I am the primary care provider for the Children, if the Court orders the return of the Children to Mexico, I will be forced to return to Mexico to provide care and support to the Children. Returning to Mexico to adjudicate the child custody and placement dispute will expose me to a grave risk of harm as I fear the Petitioner would engage in retaliatory violence against me.

I declare under penalty of perjury pursuant to the laws of the United States that the forgoing statements are true and correct.

Dated this 31st day of July, 2020.

By: _____
Sharon R. Hinnendael

###

12